389 So.2d 961 (1980)
Robert Lee WATSON, Jr.
v.
STATE.
6 Div. 947.
Court of Criminal Appeals of Alabama.
October 7, 1980.
Rehearing Denied October 28, 1980.
*962 Charles W. Allen, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., and Jean Williams Brown, Asst. Atty. Gen., for appellee.
DeCARLO, Judge.
The appellant was indicted by the grand jury of Jefferson County in May, 1978, and charged with robbery. Following a jury trial, he was found guilty of robbery on November 2, 1978, and was sentenced to ten years imprisonment in the penitentiary.

I
The first issue on this appeal is whether the appellant was denied a speedy trial for this offense in violation of his rights under Art. I, § 6, of the Alabama Constitution and the Sixth Amendment to the United States Constitution. A chronology of events necessary in understanding the question presented is as follows:
March 24, 1975: George Elston Blair was robbed by the appellant in Birmingham, Alabama.
April, 1975: Appellant was arrested and charged in Eustis, Lake County, Florida on an unrelated matter. He was incarcerated then released on bond. He remained at Eustis, Florida through the first part of 1977.
May, 1975: A complaint charging the appellant with robbery was sworn out by George Blair. A warrant of arrest, which stated,
"Defendant lives at large-2517 4th Ave. So., Birmingham, and 1420 McDonald Avenue, Eustis, Florida," was issued.
March, 1977: Appellant was arrested on a federal check charge.
April 13, 1977: The district attorney in Birmingham, Alabama, sent to the sheriff of Manatee County, Florida, in Bradenton, Florida, a letter stating that the district attorney understood that the appellant was in the custody of the sheriff. A warrant charging the appellant with robbery was enclosed with the letter. The district attorney stated in the letter that the warrant was to be placed as a detainer, and that he intended to begin extradition proceedings. No answer to the letter was ever received by the district attorney.
April, 1977-June, 1977: Appellant was brought from Manatee County, Florida to the Jefferson County, Alabama, jail in Birmingham where he was incarcerated on a federal charge. He pleaded guilty and was sentenced to two years.
June, 1977-October, 1977: Appellant was transferred from Birmingham to Atlanta. He was then sent back to Eustis, Florida, and was sentenced in Brandenton, Florida to two years. Next, appellant was sent to Jacksonville, Florida, where he was sentenced to two years.
October, 1977: Appellant was sent to federal prison in Texarkana, Texas, where he learned of the robbery charge.
November, 1977: Notice that a detainer in favor of the Birmingham district attorney had been lodged against the appellant was sent from the federal prison in Texarkana to the Birmingham district attorney.
November 16, 1977: Birmingham district attorney received the notice regarding the detainer.
February 28, 1978: Letter to the Birmingham district attorney from the appellant in which he inquires about the detainer lodged against him.
*963 March 2, 1978: A motion to dismiss by the appellant alleges the denial of his right to a speedy trial.
March 9, 1978: Birmingham district attorney received appellant's letter dated February 28, 1978, and appellant's motion to dismiss dated March 2, 1978.
March 10, 1978: Appellant filed a motion to dismiss for lack of a speedy trial.
March 13, 1978: Indictment charging appellant with robbery.
May 8, 1978: Writ of arrest issued against the appellant at the federal prison in Texarkana.
June 6, 1978: Letter from the Birmingham district attorney to the appellant stating that the district attorney is in the process of arranging with the State of Alabama to return the appellant to Alabama for a speedy trial.
July 3, 1978: Offer from the Bureau of Prisons to give temporary custody of the appellant to the Birmingham district attorney.
July 5, 1978: Motion to dismiss by the appellant for lack of speedy trial.
July 6, 1978: Birmingham district attorney received a letter dated June 29, 1978, from the federal prison in Texarkana stating that the appellant is incarcerated in that prison. According to the letter, the district attorney, on June 28, 1978, formally requested to take custody of the appellant under the interstate agreement on detainers. The prison authorities requested that the district attorney inform them of the date he will take custody of the appellant.
July 10, 1978: Appellant's motion to dismiss dated July 5, 1978, was received by the district attorney.
September 15, 1978: Indictment charging robbery was served on the appellant, and he was arraigned.
October 31, 1978: A motion to dismiss for lack of a speedy trial was filed by the appellant in open court and was denied. Appellant was then tried by a jury.
At the hearing, conducted prior to the trial, on the appellant's motion to dismiss, the appellant testified that, from April, 1975 until 1977, he had resided at the same address in Eustis, Florida. According to the appellant, he was employed by Wilson Gaines Produce Company during that period and drove a truck from Eustis, Lake County, Florida, to Bradenton, Manatee County, Florida.
The appellant, who alleged that he was not in Alabama on the date of the robbery, stated that he was unable to obtain witnesses to corroborate his story because one potential witness was deceased and the others could not remember after a time lapse of over three years. No other witnesses testified for the appellant, and the State did not call any witnesses.
In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, the United States Supreme Court ruled that, in order to determine whether an appellant's right to a speedy trial has been violated, courts should apply a "balancing test." In that balancing test the conduct of the prosecution and the conduct of the accused are weighed. Four factors to be assessed when deciding whether the appellant has been deprived of his right are length of delay, the reason for the delay, the accused's assertion of his right, and prejudice to the accused.
In Barker v. Wingo, supra, the court stated:
"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless ... the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case."
The protection of the speedy trial clause of the Sixth Amendment is triggered "when a criminal prosecution has begun and extends only to those persons who have been `accused' in the course of that prosecution." United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468.
*964 Counsel for the appellant urges in his brief that, in the present case, the prosecution against appellant commenced on May 12, 1975, when a complaint was sworn out against him and a warrant of arrest was issued. We do not agree. In United States v. Marion, supra, we find the following:
"[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.
"Invocation of the speedy trial provision thus need not await indictment, information or other formal charge. But we decline to extend the reach of the amendment to the period prior to arrest." [Emphasis added]
In light of this authority, we find that, in the present case, the appellant was designated an "accused" when a detainer was lodged against him in favor of the Jefferson County District Attorney on November 11, 1977. See Prince v. State, Ala. Cr.App., 354 So.2d 1186. On this date, appellant's right to a speedy trial attached. The district attorney did request, on April 13, 1977, that a detainer be lodged against the appellant, however, there is no evidence to show that this request was received. Thus, the length of delay, approximately eleven and one half months, was from November 11, 1977, to October 31, 1978, the date of appellant's trial. In our judgment, this delay was not "presumptively prejudicial" under the circumstance of this case; therefore, inquiry into the other factors that go into the balance is not necessary. See Barker v. Wingo, supra.
We hold that the appellant's constitutional right to a speedy trial was not violated; consequently, the trial judge was correct in overruling the appellant's motion to dismiss.

II
Appellant's second and third contentions are that the trial judge committed a gross abuse of discretion by failing to grant appellant's motions for a continuance. In the first motion, the appellant asserted that he should be granted a continuance because he had not had an adequate time to prepare for the trial and because he had not been able to locate all the necessary corroborating witnesses, nor to procure necessary supportive documents. In the second motion, made orally at the bench, the appellant requested a one day continuance so that a potential witness in charge of certain work records could attend the trial.
The record shows that, on September 15, 1978, the appellant was arraigned and was appointed an attorney; consequently, the appellant had six weeks to prepare for his trial. The transcript reveals that, according to the appellant, his wife was the bookkeeper for his former employer, and, if given the opportunity, she could produce the work records necessary at trial to show that appellant was in Florida at the time of the robbery. The trial court did allow the appellant to telephone his alleged former employer, Mr. Williams. According to the judge, Mr. Williams informed the court that he had no work records at all and that he did remember the appellant occasionally working for the company, but the employer could not remember "when, how or anything about it." Given the length of time between arraignment and trial, the court found it "incomprehensible" that the information given by Williams could not have been discovered.
The rule is well settled that the granting or denial of a motion for continuance lies within the sound discretion of the trial court and will not be overturned absent a clear showing of abuse of that discretion. Williamson v. State, Ala.Cr.App., 370 So.2d 1054, affirmed, 370 So.2d 1066; Rogers v. State, Ala.Cr.App., 365 So.2d 322; Duncan v. State, Ala.Cr.App., 355 So.2d 745.
In the present case, the appellant had adequate time to prepare his defense. The transcript revealed that testimony by appellant's former employer would not have helped the defense, and any work records appellant sought from his former employer were nonexistent. In our judgment, no abuse of discretion by the trial judge was *965 shown, therefore, the court did not err by failing to grant the continuance.

III
The appellant asserts that the State failed to prove a prima facie case of robbery because the State failed to prove an essential element of robbery, the placing of the victim in fear.
In Alabama, the offense of robbery is comprised of the following essential elements: (1) felonious intent, (2) putting in fear or force, as means of effectuating the intent, (3) and, by that means the taking and carrying away of the property of another from his person or in his presence. Henderson v. State, 172 Ala. 415, 55 So. 816; Hill v. State, 145 Ala. 58, 40 So. 654; Morris v. State, 97 Ala. 82, 12 So. 276.
The victim, in the present case, testified that, a pistol was drawn on him by the appellant, who yelled, "This is a stickup." The victim's wallet was taken from him, then he was forced to lie on the floor. While the appellant and another robber took money from the cash register, they discussed whether the victim should be killed. According to the victim, he relinquished his wallet because the appellant, who had a gun in his hand, demanded the billfold.
In Pollard v. State, Ala.Cr.App., 358 So.2d 778, this court stated:
"Robbery requires force on the part of the defendant or conduct, by word or action, that places the victim in fear of injury, but the extent of the fear is sufficient if it causes the victim to part with his property unwillingly."
Under the evidence in the present case, we find that the jury could reasonably have concluded that the words and actions of the appellant caused the victim to part unwillingly with his property because of fear of injury to his person by the appellant. We hold that the essential element, which the appellant asserts was missing, was in fact proved by the State, consequently, the trial judge was correct in overruling the appellant's motion to dismiss for failure to prove a prima facie case.

IV
The final issue raised by appellant is whether the trial court erred in overruling his motion for new trial. In the motion, the appellant argues that he should be granted a new trial because certain potential defense witnesses could not be reached prior to trial, and their testimony would probably change the result if a new trial were granted. This same issue of absent witnesses was raised at the time of trial by appellant's motions for a continuance.
The decision to grant or refuse a motion for a new trial rests largely in the discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. McBryar v. State, Ala.Cr.App., 368 So.2d 568; Yoemans v. State, 55 Ala. App. 160, 314 So.2d 79; Daniels v. State, 49 Ala.App. 654, 275 So.2d 169. Based on the reasons enumerated in Part II, we hold that no abuse of discretion by the trial court was shown, and that the trial judge did not err in overruling the motion for new trial.
We have searched the record and find no error prejudicial to appellant, therefore the judgment of conviction by the Jefferson Circuit Court is hereby affirmed.
AFFIRMED.
HARRIS, P. J., and TYSON, J., concur.
BOWEN, J., dissents.
BOOKOUT, J., joins in dissent.
BOWEN, Judge, dissenting.
I respectfully dissent from the conclusion that the defendant was not denied a speedy trial as reached in the majority opinion. Under the standards of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the defendant was denied a speedy trial.
The protection afforded a defendant is activated only when a criminal prosecution has begun and extends only to those persons who have been "accused" in the course of that prosecution. United States v. Marion, *966 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The United States Supreme Court in Marion made it clear that it is either a formal indictment or information or else the actual restraints imposed by arrest that engage the particular protections of the speedy trial provision of the Sixth Amendment; thus, the reach of the amendment is excluded from the period prior to arrest. Marion, 404 U.S. at 321, 92 S.Ct. at 463. Yet, in Marion, the prosecution was begun by indictment"the first official act designating appellees as accused individuals." Marion, 404 U.S. at 324, 92 S.Ct. at 465. Marion also clearly stands for the proposition that, in computing time for purposes of alleged speedy trial violations, the time begins to run only after a defendant is charged in the case of a suspect who is not arrested.
In this case the first official act designating the defendant as an "accused" was the issuing of the warrant of arrest. Alabama Code 1975, Section 15-3-7, provides: "A prosecution may be commenced within the meaning of this chapter by finding an indictment, the issuing of a warrant or by binding over the defendant."
A related situation was addressed in State v. Horton, 373 So.2d 1093, 1095 (Ala. Civ.App.), affirmed, 373 So.2d 1096 (Ala. 1979).
"As a general rule, an unreasonable delay in making an arrest after the issuance of a warrant will require dismissal of the charges against the defendant where the defendant has been prejudiced. 6A C.J.S. Arrest § 51 (1975); Crawford v. State, Ala.Cr.App., 342 So.2d 450 (1977); Sellers v. State, 48 Ala.App. 178, 263 So.2d 156 (1972). While the length of time between issuance of the warrant and its execution is relevant to establish an unreasonable delay, the charges against the defendant will be dismissed only when the defendant can show (1) that his ability to conduct his defense was prejudiced; (2) that he himself was not responsible for the delay; and (3) that the State ought reasonably [to] have avoided the delay. Sellers, supra."
The undisputed evidence reveals that at the time the warrant was issued, in May of 1975, the prosecuting authorities knew that the defendant was either in Birmingham, Alabama, or Eustis, Florida. The uncontradicted evidence presented by the defendant shows that he was living at an address in Florida known by the District Attorney at this time. Despite this fact, the District Attorney took no action to secure the defendant's presence in Alabama until April of 1977 when he attempted to place a detainer against the defendant who was in the custody of the Manatee County Sheriff's Office in Florida. At that time the District Attorney stated that he intended to begin extradition proceedings. However, after receiving no reply to his request for a detainer, the District Attorney did not pursue the matter further. Apparently, the District Attorney did not even realize that in April and June of 1977 the defendant was incarcerated in the Jefferson County Jail which occupies part of the very same building as the office of the District Attorney.
Consequently, the defendant's right to a speedy trial must be computed from the date criminal prosecution was instituted against him. This was May of 1975. This was when the defendant was initially "accused" of a crime. The period from this time until the defendant was brought to trial constitutes three and one-half years.
The defendant first learned of the robbery charge in October of 1977. In March of 1978, the defendant complained that he had been denied a speedy trial. Thus it cannot be said that the defendant waived his right under the Sixth Amendment. Ex parte State ex rel. Atty. Gen., 255 Ala. 443, 52 So.2d 158 (1951); Mayberry v. State, 48 Ala.App. 276, 264 So.2d 198, cert. denied, 288 Ala. 746, 264 So.2d 207 (1972).
The record reveals no valid reason for justifying delay. While missing witnesses may constitute a valid excuse, Barker v. Wingo, 407 U.S. at 531, 92 S.Ct. at 2192, this excuse in this case will only cover a period from April until May of 1978. No justification appears for the delay for the *967 period of May 1975 until April 1978 or even from the period of November 11, 1977 (the date the defendant was "accused" under the majority opinion) until the defendant's trial date, with a two-month period excluded because of the missing witness.
In brief, the State attempts to justify the delay by arguing that "there is real doubt that the State would have been able to locate Appellant in order to bring him to trial" because of the "myriad of criminal charges in several jurisdictions" the defendant was facing. This assumption is unfounded and unauthorized as a matter of law. United States v. Salzmann, 417 F.Supp. 1139 (E.D.N.Y.), affirmed, 548 F.2d 395 (2nd Cir. 1976). The State has a constitutional duty to make a diligent, good-faith effort to gain custody of the accused and bring him to trial. Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); Turner v. State, 378 So.2d 1173 (Ala.Cr.App.), cert. denied, 378 So.2d 1182 (Ala.1979); Sellers v. State, 48 Ala.App. 178, 263 So.2d 156 (1972).
The evidence shows that there was no such diligent, good-faith effort made in the case and that the failure to do so was unjustified.
The undisputed evidence reveals that the defendant was prejudiced by the delay in prosecution: One witness died while another could not be found and the detainer against the defendant kept him from participating in a federally sponsored half-way house.
For these reasons, I find that the defendant was denied his constitutional right to a speedy trial.